# EXHIBIT A

SSL SEA SHIPPING LINE

# BILL OF LADING
**FMC: 010787N**

| SHIPPER/EXPORTER | BOOKING NUMBER | BILL OF LADING NUMBER |
|---|---|---|
| LCL SHIPPING USA, INC<br>DBA CAGO PLANET LOGISTICS<br>625 W. Victoria St.<br>COMPTON CA 90220<br>310-637-7820 | YLX383408<br>EXPORT REFERENCES<br>**SHIPPERS REFERENCE #:** | 280221-100 |
| CONSIGNEE (NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER)<br>SACO SHIPPING GMBH<br>WOLLKAMMEREI STR 1<br>21107 HAMBURG, GER<br>PH: 4940311706237 | FORWARDING AGENT<br><br>ORIGIN | Shippers declared value subject to extra freight as per tariff and clause 7(3) of this B/L in US Dollars |
| NOTIFY PARTY<br>SAME AS CONSIGNEE | FOR DELIVERY PLEASE APPLY TO<br>DIRECT CONSIGNMENT | |

| PRE-CARRIAGE | PLACE OF RECEIPT | PIER | |
|---|---|---|---|
| VESSEL / VOYAGE<br>MOL EMPIRE 034E | PORT OF LOADING<br>LONG BEACH, CA, UNITED STATES | **NUMBER OF ORIGINAL BL's** | **TOTAL NUMBER OF PACKAGES** |
| PORT OF DISCHARGE<br>HAMBURG, GERMANY | PLACE OF DELIVERY BY ON-CARRIER<br>HAMBURG, GERMANY | **PROOF COPY** | |

**PARTICULARS FURNISHED BY SHIPPER**

| MARKS & NUMBERS | DESCRIPTION OF COMMODITIES | WEIGHT (LBS/KILOS) | MEASURE (CFT/CME) |
|---|---|---|---|
| | 1 x 40 HIGH CUBE SL&C STC: | | |
| YMLU8686950<br>2023434 | 2 PiecesOF AUTOS | 8999.18/4082 | /0 |
| | 2002 TOYOTA 4RUNNER<br>VIN NO. JT3GN86R420234833 | | |
| | 2008 LEXUS LS<br>VIN NO. JTHBL46F985076557 | | |
| | SHIPPER`S LOAD, STOW, WEIGHT AND COUNT<br>LADEN ON BOARD: 4/2/21 MOVE:CY/CY | 8999.18/4082 | 0/0 |
| | **FREIGHT: PREPAID** | | |
| | ITN: X20210324879407<br>**END OF SHIPMENT DETAILS** | | |

THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |

RECEIVED by the Carrier the Goods as specified above in apparent good order and condition unless otherwise stated, to be transported to such place as agreed, authorized or permitted herein and subject to all the terms and conditions appearing on the front and reverse of this Bill of Lading to which the Merchant agrees by accepting this Bill of Lading, and local privileges and customers notwithstanding. The particulars given above as stated by the shipper and the weight, measure, quantity, condition, contents and value of the Goods are unknown to the Carrier. In WITNESS whereof three (3) original bills of Lading have been signed if not otherwise stated above, the same being accomplished the other(s), if any, to be void. If required by the Carrier one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order. CARGO MOVING PURSUANT TO AN NRA-RULES TARIFF AVAILABLE AT WWW.ETM.COM. Signed on behalf of the Carrier.

| PLACE OF ISSUE | DATE OF ISSUE | CURRENCY | TOTAL | TOTAL |
|---|---|---|---|---|
| GARDENA,CA USA | 4/2/21 | USD | | |

BY SEA SHIPPING LINE AS CARRIER

# BILL OF LADING

**1. DEFINITIONS**

A. "SSL" is the trade name of the carrier, Sea Shipping Line

B. "Carrier" means SSL, the vessel, her owner, operator, and charterer.

C. "Ship" shall include any substituted vessel and any craft, lighter or other means of conveyance used by the carrier in the performance of the contract.

D. "Merchant" shall include the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any persons, including any legal entity, owning or entitled to the possession of the Goods or this Bill of Lading, and anyone acting on behalf of any such persons.

**2. CLAUSE PARAMOUNT**

Not withstanding any provision to the contrary in this bill of lading, disputes arising from this bill of lading will be governed by the United States Carriage of Goods by Sea Act, 46 U.S.C. sec. 1300, et seq. (COGSA), unamended. Neither the Visby Amendments, the Hamburg Rules, nor any other law or rule which may increase the carrier's liability will be deemed incorporated into this bill of lading. The Carrier's liability will be limited to United States $500 per package, or in the case of goods not carried in packages, per customary freight unit unless a higher value is declared.

If, and only if, disputes arising from this bill of lading are litigated in a forum which must apply the United Nations Convention on the Carriage of Goods by Sea 1978 (the Hamburg Rules) the following provision will apply.

This bill of lading shall take effect subject to any national law in force at the port of shipment or place of issue of the Bill of lading making the United Nations Convention on the Carriage of Goods by Sea 1978 (the Hamburg Rules) compulsorily applicable to this bill of lading, in which case this bill of lading shall have effect subject to the Hamburg Rules which shall nullify any stipulation derogating therefrom to the detriment of the shipper or consignee.

**3. The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery, or mis-delivery or loss of or damage to the goods occurring while the goods are not in his actual custody. The Carrier does not undertake to deliver the goods at destination at any particular time or to meet any particular market or use and assumes no liability whatsoever for any direct or indirect loss or damage thereby caused to the merchant.**

**4. JURISDICTION**

Any dispute arising under this bill of lading shall be brought against or by the carrier in the United States District Court, Southern District of New York, in accordance with the laws of the United States. Notwithstanding the foregoing, the carrier or merchant may exercise any provisional remedy or temporary relief available to it in any other jurisdiction.

**5. HIMILAYA CLAUSE**

It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever by under any liability whatsoever to the Merchant for any loss, damage or delay arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions in this clause every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.

**6. SCOPE OF VOYAGE**

The voyage herein contracted for shall include usual or customary or advertised ports of call whether named in this contract or not, also ports in or out of the advertised geographical, usual or ordinary route or order. The ship may sail beyond the port of discharge or in a direction contrary thereto or depart from the direct or customary route . Also to proceed or return to or stop or slow down at or off any ports or places of use same in any rotation, call at any port or place more than once for any purpose whatsoever may sail with or without pilots, tow or be towed, save or attempt to save life or property, may adjust compasses, dry dock, go on ways or to repair yards, go on trial trips shift berths, take fuel or stores and all of the foregoing to be included in the contract voyage.

**7. CARRIER'S RESPONSIBILITY**

The Carrier takes responsibility from the place of receipt to the place of delivery as follows:

1. At all times the Carrier's liability shall be in accordance with the U.S. Carriage of Gods by Sea Act, whether the damage occurred during the ocean voyage or overland portion of the transportation.
2. If it should be adjudged that the U.S. Carriage of Goods by Sea Act does not apply during the overland portion of the transportation, and that the damage occurred while the goods were in the custody of the inland carrier, then, and only then, the liability of the Carrier shall be in accordance with the terms and conditions of the inland carrier's bill of lading and/or tariffs.
3. In no event shall the liability of the Carrier exceed $500.00 per package, or in the case of goods not shipped in packages, per customary freight unit, unless the nature and value of the goods have been declared by the shipper before shipment and declared on the reverse side of this bill of lading and extra freight paid thereon.
4. In the event that consignees/receivers of cargo require the Carrier to deliver cargo at a port or place beyond the place of delivery originally designated in this bill of lading, and the Carrier in its absolute discretion agrees to such further carriage, such further carriage shall be undertaken on the basis that the terms and conditions of this bill of lading shall apply to such carriage as if the ultimate destination agreed with consignees/receivers had been included in the description of the transport on the reverse side of this bill of lading.

**8. DESCRIPTION AND PARTICULARS OF THE CARGO**

The description and particulars of the cargo mentioned herein are those furnished in writing by the Shippers who guarantee the correctness thereof. The Carrier has no knowledge of the weight contents, measure, quantity, condition, marks, numbers and value of the cargo and undertakes no responsibility whatsoever in such respect and the Merchant warrants no illegal cargo is concealed within any package made up by him. The Merchant shall be liable for and indemnify the Carrier of any injury, loss or damage arising or occurring due to the Shipper's failure to provide correct details.

The Merchant warrants that securing and packaging of cargo are adequate to ensure handling in ordinary course without damage to the cargo, the ship, other property or persons The Merchant further agrees to disclose in writing any condition, nature quality, ingredient or characteristic of the cargo which might indicate their inflammable or in any other respect dangerous or hazardous nature by packed and marked in conformity with national or international rules, regulations or Conventions so as to inform the Carrier and/or any other interested party of the true nature hereof The Merchant assumes full responsibility for any consequences whatsoever of any failure in any respect above mentioned.

If at any time the cargo for any reason whatsoever be deemed in the judgement of the Carrier or Master or the Health of other Authorities to be in any respect unfit for further carriage or injurious or dangerous in any respect or it order condemned by such Authorities, the cargo may be disposed of as deemed proper by the Carrier Master or others solely at the risk and expense of the Merchant. On such occasion the Carrier's responsibility shall cease.

**9. LOADING, DISCHARGING AND DELIVERY**

The Port Authorities are hereby authorized to grant a general order for discharging immediately upon arrival of the Ship, and loading and discharging may commence without previous notice.

Loading, discharging and delivery of the cargo shall be arranged by the Carrier's Agent unless other wise agreed. Landing, storing and delivery including all lighterage and use of craft in discharging shall be at the risk and expense of the Merchant and landing and delivery charges and Pier dues shall be at the expense of the goods unless included in the freight herein provided for.

The Merchant or his Assign shall tender the goods when the Vessel is ready to load as fast as the Vessel can receive and — but only if required by the Carrier — also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the Vessel may leave the port without further notice and dead freight is to be paid.

The Merchant or his Assign shall take delivery of the goods and continue to receive the goods as fast as the Vessel can deliver and — but only if required by the Carrier — also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods whereafter this Contract shall be deemed truly fulfilled. If cargo is not applied for within a reasonable time the Carrier may at its option and subject to its lien arrange for storage and ultimately sell the goods, all of which to be for the risk and expense of the merchant. The Carrier shall not be required to give any notification of disposition of the goods. The Merchant shall accept his portion of unidentified loose cargo. Any lightening in or off ports of loading or ports of discharge to be for the account of the Merchant.

**10. OPTIONAL CARGO**

The port of discharge for optional cargo must be declared to the Vessel's agent at the first optional port not later than 48 hours before the Vessel's arrival there in the absence of such declaration of the Carrier may elect to discharge at any of the optional ports thereby duly fulfilling the contract of carriage. Any option can only be exercised for the full Bill of Lading quantity.

**11. GOVERNMENT DIRECTIONS, WAR, STRIKE, ETC.**

A. The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.

B. In case of war, hostilities, strike, port congestion, lockouts, civil commotions, quarantine, ice storms, or any other cause whatsoever beyond the Carrier's control (whether actual or threatened and whether or not existing or anticipated at the commencement of the voyage) which in the judgement of the Master or Carrier may result in damage to or loss of the Vessel or cargo or give use rise to risk of capture seizure or detention of Vessel or cargo or expose any person on board to the risk of loss of life or freedom or make it unsafe or imprudent for any reason to proceed on or continue the voyage or enter or discharge at the port or place of discharge or transshipment or give rise to delay or difficulty in reaching discharging at or leaving the port or place of discharge or transshipment the Master and Carrier shall at his absolute discretion (any warranty or rule of law notwithstanding) be at liberty to discharge the cargo at the port of loading or any other state and convenient port. Such discharge to be deemed due fulfillment of the Contract of Affreightment and full freight and charges shall be deemed to have been earned thereunder. When the goods have been discharged as herein provided they shall thereafter be at the sole risk and expense of the Merchant. The Carrier shall be entitled to payment of all extra expenses, including return freight if any incurred in the performance of any of the aforegoing liberties, and also to a reasonable compensation for any extra services rendered to the goods.

C. If at any time upon or after the commencement of the voyage in the sole opinion of the Master and/or Carrier, call at Port(s) of discharge through the Suez/Panama Canal(s) or in the Arabian Gulf due to the closure of the Strait of Hormuz or in any other navigable waters in connection with the voyage and such trapping lasts and the cargo to be deemed to have been placed under the Merchant's custody and the Carrier/Vessel to be under no further responsibility whatsoever for the cargo (if possible the Vessel to discharge the cargo at the nearest available port) according to the principles laid down above (B)

**12. FREIGHT AND CHARGES, ETC. LIEN**

A. Freight shall be payable on actual gross, intake weight or measurement or at Carrier's option on actual gross discharged weight or measurement. Freight may be calculated on the basis of the particulars of the goods furnished by the Shipper herein but the Carrier may at any time open the packages and examine, weight, measure and value the goods and reserves the right to obtain from the Merchant the original invoice in order to ascertain actual facts. The Carrier is entitled in case of incorrect declaration of cargo details and value to claim double the amount of freight which would have been due if such declaration had been correctly given and the Shipper, Consignee and goods shall be liable for any expense incurred for examining, weighing, measuring and valuing the goods.

Full freight shall be considered completely earned on shipment whether to be prepaid or collected at destination and the Carrier shall be entitled to all freight and charges due hereunder and to receive and retain them absolutely and irrevocably under all circumstances whatsoever ship and/or cargo lost or not lost or the voyage changed, broken up, frustrated or abandoned. All charges or sums payable to the Carrier are due when incurred and such charges, sums and all unpaid freights or other charges shall be paid in full without any counterclaims or deductions. Interest at 18 per cent per annum shall run from the date when freight and charges are due.

B. The Shipper and Consignee shall be jointly and severally liable to the Carrier for the payment of all freight charges and other amounts due to the Carrier and for any failure of either or both to perform his or their obligations under the provisions of this Bill of Lading and they shall indemnify the Carrier against and hold it harmless from all liability loss damage and expense which the Carrier may sustain or incur arising or resulting from any such failure or performance by the Shipper and Consignee or either of them. Any person, firm or corporation engaged by any party to perform forwarding services with respect to the cargo shall be considered the exclusive agent of the Shipper and Consignee for all purposes and any payment of freight to such person, form or corporation shall not be considered payment to the Carrier in any event. Failure of such person, firm or corporation to pay any part of the freight to the carrier shall be considered default by the Shipper and/or Consignee in the payment of freight.

The Shipper and Consignee shall be liable for return freight and charges on goods refused exportation or importation by any or public authorities and the Carrier accepts no responsibility therefor.

C. If there shall be a forced interruption or abandonment of the voyage at any stage, and the Carrier executes his discretion indisposing of the goods as per clause (10) hereof, any and all such dispositions shall be for the risk and account of the Merchant and no deductions are to be made in any amount due to the Carrier.

D. The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing on board as well as expenses incurred in repairing damage to cargo and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons.

E. The Merchant shall in all respects comply with the regulations and requirements of the Port, Customs and other authorities and shall be liable for any payment of — or to indemnify the Carrier in respect of outlays for — any dues, taxes, charges as well as fines, imposts, loss, damage or detention levied in connection with the goods howsoever caused including any action or requirement of any Government or governmental Authority or persons purporting to act under authority thereof.

F. The Carrier shall have a Lien on the goods and any documents relating thereto for all freight charges and other amounts due under this Contract and for General Average contributions and costs of recovering same and may enforce this Lien by all legal means and without notice. Any balance of such amounts due to the Carrier which may remain uncovered on exercising a lien shall remain the liability of the Merchant.

**13. LIEN**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and for general average contributions to whomsoever due. The Carrier shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due for him to the Carrier under any other contract. The Carrier may exercise his lien at any time and any place in his sole discretion, whether the contractual Carriage is completed or not. In any event any lien shall extend to cover the cost of recovering any sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant. The Carrier's lien shall survive delivery of the Goods.

**14. PACKAGE LIMITATION**

The carrier's liability will be limited to the amount set forth in applicable rules, regulations and law according to the Clause Paramount and paragraph 7 (3) herein with respect to each container except where the shipper declares ad valorem valuation on the face hereof and pays additional freight on such declared valuation. Where the goods in one container belong to more than one owner, the limitation amount as aforesaid shall be apportioned according to each owner's interest in the contents. For goods received break bulk, Carrier's limitation as aforesaid shall be applied per carton, bundle, skid, pallet or other unit as the case may be unless the shipper declares ad valorem value herein and pays additional freight, etc. as above.

**15. CONTAINERS, ETC.**

Where any container, transportable tank, flat or pallet has not been packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense it caused by

A. The manner in which the container, etc. has been filled, packed, stuffed or loaded, or

B. The unsuitability or defective condition of the contents for such carriage, or

C. The unsuitability or defective condition of the contents for such carriage or to its intended or required purpose for which the Carrier cannot be blamed or which would have been apparent upon reasonable inspection by the Merchant at or prior to the time of its being filled, packed, stuffed or loaded.

**16. STOWAGE**

The goods may be stowed in poop forecastle deck houses shelter deck, passenger space or any other covered in space commonly used in the trade for the carriage of goods and such goods shall be deemed for all purposes (including General Average) to be stowed under deck.

Goods may be stowed by the Carrier or his agents or servants in containers and containers whether filled as aforesaid or received filled may be carried on or under deck without notice. The Carrier's liability for such carriage shall be according to the Clause Paramount hereof notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to General Average.

**17. LIVE ANIMALS, PLANTS AND DECK CARGO**

Live animals, plants and cargo carried on deck and stated herein to be so carried shall be carried according to Clause Paramount hereof with the exception that all risks of loss inherent in the carriage of live animals, plant and deck cargo shall be borne by the Merchant. The Carrier shall not be liable in any other respect for such cargoes unless the cause of damage/loss be proven to have been caused by the actual fault of privity of the Carrier or any of his servants.

The goods shall contribute to General Average.

**18. FIRE**

Neither the Carrier nor any Corporation owned by, subsidiary to or affiliated with the Carrier shall be liable to answer for or make good any loss or damage to the goods wheresoever, whensoever and howsoever occurring (even though before loading on or after discharge from the ship) be reason of any fire whatsoever unless such fire shall have been caused by the design or neglect or by the actual fault or privity of the Carrier or of such Corporation respectively.

**19. DEMISE CLAUSE**

If the ship is not owned by or chartered by demise to the Company or Line by whom this Bill of Lading is issued (as may be the case notwithstanding anything that appears to the contrary) this Bill of Lading shall take effect only as a contract with the owner or Demise Charterer as the case may be as Principal, made through the Agency of said Company or Line who act as agents only and who shall be under no personal liability whatsoever in respect thereof.

**20. BOTH-TO-BLAME COLLISION CLAUSE**

*(To remain in effect even if unenforceable in the Courts of the United States of America)*

If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owner of the said goods paid or payable by the other or non-carrying vessel or her Owner to the Owner of said cargo and set off or recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**21. AMENDED JASON CLAUSE**

General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York Antwerp Rules 1974 in the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not for which or for the consequence of which the Carrier is not responsible by statute contract or otherwise the Merchant shall contribute with the carrier in General Average to the payment of any sacrifice, losses or expenses of a General average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect to the goods. If a saving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**22. REFRIGERATION CLAUSE**

The Carrier shall not be accountable for the condition of goods shipped under this Bill of Lading nor for any loss or damage thereto arising from rotting, ripening, inherent vice of the thing carried effects of fumigation, temperature, risks of refrigeration, accidents to or explosion breakage, derangement or failure of any refrigerator plant or part thereof or in any material used in the process of refrigeration unless shown to have resulted from causes for which the Carrier may not be exempted under the provisions of the Hague Rules or Hague Visby Rules or applicable legislation.

**23. CARGO CLAIMS**

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his Agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under this contract such removal shall be prima facie evidence of the delivery by that Carrier of the goods as described in the Bill of Lading if the loss or damage is not apparent the notice must be given within three days of delivery.

In any event the Carrier and the Ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after the delivery of the goods or the date when the goods should have been delivered.